IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LEROY DONNIE GRANT**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-00200-L** |
| | § | |
| **CPC LOGISTICS, INC., and** | § | |
| **CPC BUILDING &** | § | |
| **MANUFACTURING PRODUCTS**, | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendants' Motion for Summary Judgment (Doc. 41), filed June 17,

2013; Plaintiff's Motion to Answer Defendants' Summary Judgment (Doc. 43), filed June 28, 2013;

and Defendants' Reply to Grant's Response to Their Motion for Summary Judgment (Doc. 49), filed

July 15, 2013.  After careful consideration of the motions, responses, replies, record, and applicable

law, the court **grants** Defendants' Motion for Summary Judgment and **overrules and denies as**

**moot** Defendants' Objection to and Motion to Strike Plaintiff's Summary Judgment Evidence.

**I.      Background**

Leroy Donnie Grant ("Grant" or "Plaintiff") filed his complaint against Defendants CPC

Logistics, Inc. and CPC Building & Manufacturing Products (collectively, "Defendants") on January

19, 2012.  Plaintiff then filed his First Amended Complaint against Defendants on August 10, 2012,

seeking to recover damages for race and color discrimination under Title VII, the Texas Commission

on Human Rights Act ("TCHRA"), and 42 U.S.C. § 1981.  Plaintiff filed a Charge of Discrimination

with the Equal Employment Opportunity Commission ("EEOC") on August 31, 2011.  Pl.'s Am.

Compl. ("Compl.") ¶ 5.  The EEOC issued Plaintiff a right-to-sue letter on December 1, 2011.  *Id*. ¶ 17.

Plaintiff argues that his termination was wrongful.  *Id*. ¶ 5.  He states that he is one of the few black truck drivers employed by Defendants.  *Id*. ¶ 6.  He contends that on August 26, 2011, he was terminated for an alleged logbook violation that occurred on August 13, 2011.  *Id*. ¶ 8. Plaintiff argues that Defendants' reasons for terminating him were a pretext to terminate him because he is black.  *Id*. ¶ 13.  Plaintiff contends that there are other similarly-situated white drivers employed by Defendants who have received numerous tickets for log violations and other violations within the last year but have not been terminated.  *Id*. ¶ 14.  During his deposition, Plaintiff testified that John Fitzgerald ("Fitzgerald"), his supervisor, referred to him as "boy" two or three times, in addition to "nigger," during his employment.[1]  App. to Br. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s App.") at 44.  Finally, in his response to Defendant's Motion for Summary Judgment, Plaintiff contends that Defendants "wanted to get rid of him / or fire him after he reported wrongdoing of CPC Logistics Inc. Driver Eddie Ice employee was also assigned to the Crosby Group Inc., for going to the sex club while on duty."  Pl.'s Mot. to Answer Defs. Summ. J. ("Pl.'s Resp.") 6.

Defendants contend that Plaintiff was not qualified for his position due to logbook and speeding violations.  Def.'s Br. in Supp. of Their Mot. for Summ. J. ("Def.'s Br.") 10-11.  Defendants argue that his disqualification led to his termination.  *Id*.  Additionally, Defendants maintain that no similarly-situated employee was treated more favorably than Plaintiff.  *Id*. at 12.

---

[1] Defendants only included certain excerpts of Plaintiff's deposition in their Appendix.  While Plaintiff was discussing the actions of Fitzgerald, it appears that, contextually, an individual other than Fitzgerald is alleged to have called Plaintiff by the latter term.

**Memorandum Opinion and Order - Page 2**

Finally, Defendants deny the allegation that Fitzgerald made any discriminatory or racial comments towards Plaintiff. *Id*. at 12-13.

## II.     Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact

to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.* (citation omitted).

Mere conclusory allegations are not competent summary judgment evidence, and thus are

insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.

1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not

competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert.*

*denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record

and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136

F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of

evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also*

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832

(1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws

will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact

issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary

judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the

existence of an element essential to its case and on which it will bear the burden of proof at trial,

summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III.    Undisputed Facts

Plaintiff's employment by Defendants began on April 11, 2006. CPC Logistics, Inc.

("CPC"), the employer, is a transportation logistics company that provides drivers and driver services

to private transportation carriers. William Mike Williams and Eddie Ice were also employees of

CPC. Plaintiff was assigned to drive for the Crosby Group, one of CPC's clients. Fitzgerald, a

regional manager for CPC, was the manager and supervisor of the Crosby Group account starting in August 2010.  Plaintiff was terminated by Defendants on August 26, 2011.

The United States Department of Transportation ("USDOT") and CPC policies require drivers to complete accurate daily logs charting their duty status.  CPC's Uniform Rules and Regulations require drivers to log their time accurately and comply with state speed limits. Compliance with CPC policy is a condition of a driver's employment, and drivers can be subject to discharge on the first offense for violations of the CPC logging policy or for speeding.

When reviewing the logbooks and calculating a driver's speed, Fitzgerald, Plaintiff's supervisor, first determined a route's distance in miles by using GPS.  He then divided the route's distance by the time it took to drive as entered into the logbook.  Then, Fitzgerald added the total miles driven to get the average speed on all routes throughout the day.

Plaintiff admits that he used "poor judgment" when he logged his time and also states that his logs could have reasonably given Fitzgerald the impression that he was either speeding or violating CPC's policies.  App. at 63-64; 66-67.  Plaintiff also states that the time record in the logbook uses a rounding system, which rounds to fifteen-minute intervals, and that he "erroneously rounded his time down."  Pl.'s Resp. 10.

IV.    **Consolidating Claims**

Plaintiff bases his claims on Title VII, the TCHRA, and 42 U.S.C. § 1981.  When all three of these causes of actions have been asserted, the analysis for each is the same and may be done pursuant to Title VII.  "Because one of the purposes of the TCHRA is to 'provide for the execution of the policies of Title VII of the Civil Rights Act of 1964,' we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the TCHRA."  *Reed*

*v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633-34 (Tex. 2012) (footnotes and internal citations omitted)). Additionally, when analyzing a claim for discrimination under both Title VII and § 1981, the analysis under both statutes is identical. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). The only substantive differences between the two statutes are their respective statutes of limitations and the requirement under Title VII that the employee exhaust administrative remedies. *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 351 (5th Cir. 2001)). Neither of those differences is relevant here. Therefore, since these three statutory bases are functionally identical for the purposes of Plaintiff's claims, it would be redundant to analyze separately the merits of the claim under each statute. *See id.*

## V.    Legal Standards

### A.    Prima Facie Case and Pretext in Discrimination Cases

To survive a motion for summary judgment, a Title VII plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Once this prima facie case has been established, there is a presumption of discrimination, and the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802-04. If such a showing is made, the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext for intentional discrimination. *Id.*

After a Title VII case reaches the pretext stage, the question for summary judgment is whether a rational factfinder could find that the employer intentionally discriminated against the plaintiff on the basis of race. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). A "plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). "Pretext-plus" is not required to support an inference of retaliatory discrimination. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," and may therefore be enough to prevent summary judgment or judgment as a matter of law. *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 148 (2000); *Sandstad*, 309 F.3d at 897. This showing, however, is not always enough to prevent summary judgment "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148.[2]

### B.    Retaliation Standard for Title VII and TCHRA Claims

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment

---

[2] The court will not analyze Plaintiff's claims under the "mixed-motive" test, also called the "modified *McDonnell Douglas*" approach, set forth in *Desert Palace* and subsequent cases. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003); *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Grant has made no argument that this is a mixed-motive case, and no evidence has been presented that such a framework should apply in this case.

practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a prima facie case of retaliation in this circuit, a plaintiff must show that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted);  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).  The establishment of a prima facie case gives rise to an inference of retaliation.  *Montemayor,* 276 F.3d at 692*.*  This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action.  *McCoy*, 492 F.3d at 557.  Once a defendant articulates such a reason, the inference of discrimination or retaliation raised by the prima facie showing drops from the case.  *Montemayor,* 276 F.3d at 692.

At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose.  *McCoy*, 492 F.3d at 557 (citation omitted).  "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m).  This requires proof that the unlawful retaliation

would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If the employee fails to prove, or raise a genuine dispute of material fact, that the employer's real reason is a pretext for its allegedly retaliatory conduct, the defendant is entitled to summary judgment. *See McCoy*, 492 F.3d at 561-62. The standard set forth in this and the preceding paragraph applies for retaliation claims brought pursuant to TCHRA. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487-88 (5th Cir. 2004) (citations omitted).

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted). In so ruling, the Court rejected Fifth Circuit authority, *id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)). In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

VI.     **Analysis**

A.      **Plaintiff's Evidence of Discrimination**

By way of his deposition, Plaintiff argues that he has direct evidence of discriminatory remarks made by Fitzgerald, his supervisor.  Workplace remarks are considered sufficient evidence of discrimination if they are (1) related to the protected class of persons of which the plaintiff is a member, (2) proximate in time to the complained-of adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue.  *Jenkins v. Methodist Hosps. of Dallas, Inc.*, 478 F.3d 255, 261-62 (5th Cir. 2007) (citations and internal quotation marks omitted).

Plaintiff states that he was called "boy" and "a nigger" and that these remarks were evidence of discriminatory conduct.[3]  Def.'s App. 83.  First, Plaintiff does not mention this allegation in his Amended Complaint or in his response to Defendants' Motion for Summary Judgment.  The only time that Plaintiff mentioned this was during his deposition on May 30, 2013.  As Defendants point out, there is no reference to this allegation in Plaintiff's EEOC file.  Def.'s App. 83.  Moreover, as Plaintiff provides no information as to when the statements were made, he has failed to show that the statements were proximate in time to the complained-of adverse employment decision.

---

[3] The United States Supreme Court addressed whether the use of "boy" alone is evidence of discriminatory intent.  The Court held that "[a]lthough it is true the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign.  The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage."  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006).  While the term can potentially demonstrate discriminatory animus, Plaintiff, as will be shown, has provided no evidence that the alleged remarks were proximate in time to the adverse employment decision or that they were related to the employment decision at issue.

Additionally, as mentioned above, Defendants only included excerpts of Plaintiff's deposition in their Appendix.  While Plaintiff was discussing the actions of Fitzgerald, it appears that, contextually, an individual other than Fitzgerald is alleged to have called Plaintiff by the latter term.

**Memorandum Opinion and Order - Page 10**

Further, there is no evidence in the record that establishes that Defendants' remarks were related to the employment decision at issue.  Additionally, Plaintiff never complained of or reported any of the remarks to any supervisor or employer.  "Stray remarks with no connection to an employment decision cannot create a fact issue regarding discriminatory intent and are insufficient to defeat summary judgment."  *Scales v. Slater*, 181 F.3d 703, 712 (5th Cir. 1999).  There is no evidence that the remarks, assuming they were made, were related to the employment decision at issue, and the court now moves to the prima facie case analysis.

### B.     Prima Facie Case of Race Discrimination

Since Plaintiff failed to provide direct evidence of discrimination, he must create a presumption of intentional discrimination by establishing a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802-804.  To establish a prima facie case of race discrimination in an employment termination case, Plaintiff must prove, or raise a genuine dispute of material fact, that he "(1) is a member of a protected class; (2) was qualified for h[is] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."  *Okeye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (citations and internal quotation marks omitted).

There is no question that Plaintiff established that he is a member of a protected class and that he was subject to an adverse employment action.  With respect to Defendants' argument that he was not qualified, the court finds this argument unavailing as the record demonstrates that Plaintiff

**Memorandum Opinion and Order - Page 11**

possessed the skills and ability for the job for which he was hired.  The case turns on whether

Plaintiff violated CDC's policies and state laws regarding speeding, not whether he was qualified

to perform his duties.

With respect to disparate treatment and whether others similarly situated were treated more

favorably, there is no evidence in the record demonstrating that the two employees Plaintiff refers

to were similarly situated and treated more favorably.

> An employee who proffers a fellow employee as a comparator must demonstrate that
> the employment actions at issue were taken "under nearly identical circumstances."
> The employment actions being compared will be deemed to have been taken under
> nearly identical circumstances when employees being compared held the same job
> or responsibilities, shared the same supervisor or had their employment status
> determined by the same person, and have essentially comparable violation histories.
> And, critically, the plaintiff's conduct that drew the adverse employment decision
> must have been "nearly identical" to that of the proffered comparator who allegedly
> drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009).

In his Amended Complaint, Plaintiff states that "other similarly situated white drivers

employed by Defendants have received numerous tickets for log violations and other violations

within the last year, but they were not terminated."  Compl. ¶ 14.  In Plaintiff's response to

Defendants' Motion for Summary Judgment, he specifically refers to the treatment of William Mike

Williams ("Williams")[4] and Eddie Ice ("Ice").

There is no question that Ice and Plaintiff held the same log responsibilities and shared the

same supervisor.  Ice, however, was terminated after his second log violation while Plaintiff

committed four violations before being terminated.  Def.'s Reply to Grant's Resp. to Their Mot. for

---

[4] Plaintiff refers to the employee as "Michael Williams"; however, his correct name is "William Mike
Williams."

**Memorandum Opinion and Order - Page 12**

Summ. J. ("Reply") 5; Def.'s App. 4, 20-31.  Plaintiff also alleged that Ice had visited a sexually

oriented business (a "sex club") while on duty.  Pl.'s Resp. 6.  Ice and Plaintiff had different

violation histories, as Ice only had two log violations and Plaintiff had four.  Additionally, while it

is not clear that attending "a sex club" while on duty is a direct violation of company policy, this

conduct is not similar to Plaintiff's and would also establish a different violation history.  Therefore,

Plaintiff and Ice do not have essentially comparable violation histories and are not similarly situated.

Additionally, Williams and Plaintiff held the same responsibilities, shared the same

supervisor, *and* had essentially comparable violation histories; however, since they were both fired

after the same number of violations, Williams was not treated more favorably than Plaintiff.

Defendants argue that Williams received only one violation until his mid-2011 layoff and that he was

not similarly situated to Plaintiff.  Reply 5.  In their reply, Defendants refer the court to the appendix

that they submitted with their response to Plaintiff's Motion to Compel.  While it is somewhat

difficult to decipher the content of the inspection sheet, one document shows that Williams only had

one violation in the past 24 months as of December 14, 2012.  Def.'s App. in Resp. to Grant's Mot.

to Compel 6.  Defendant's Appendix also includes a warning letter that was sent from Fitzgerald to

Williams.  *Id*. at 2.  The letter states that a "recent audit of [Williams's] logs has revealed that on

March 8 & 29, April 7, 2011 [he] was in violation of Section 395.3 of the Federal Motor Vehicle

Safety Regulations by exceeding the 14-hour driving-duty regulation . . . ."  *Id*.  The letter also states

that Williams's audit "shows [he has] excessive speeds for the miles logged vs. time logged on

several of the legs on [his] trips for these same days."  *Id*.  The letter then cites subsection (d) of the

CPC Uniform Rules & Regulations and states "Logs - Any violations of 11 hours driving, 14 hours

on duty or 70 hours in 8 days hours of service accumulated within any 12-month period will be

**Memorandum Opinion and Order - Page 13**

subject to the following discipline." *Id*. The letter further states that a first offense leads to a warning letter. *Id*.

The warning letter sent to Williams set forth three days (March 8, March 29, April 7) where violations were found. While the letter mentions the violation of the 14-hour driving policy, it also mentions excessive speeds, and the violations could arguably be comparable to Plaintiff's violations. From what the court can ascertain, CPC documented Williams as having violated a policy that only leads to a warning letter after the first offense, whereas Plaintiff's first offense (as the rules state) could have led to discharge. According to Fitzgerald, Plaintiff received a verbal warning after his November violations. Def.'s App. 3. Plaintiff also received a Final Written Warning after his violation in February. *Id*. at 3, 16. Regardless of the timing or quantity of warnings both received, based on the court's review of the record, Williams and Plaintiff were terminated after their fourth violations, and therefore Williams was not treated more favorably than Plaintiff. Williams had violations on March 8, March 29, and April 7, and he was then terminated in July 2011.[5] *Id*. at 7. Plaintiff had violations on November 18, November 19, and February 3, and he was then terminated after a subsequent violation in August.

In their reply to Grant's Response, Defendants object and move to strike Grant's comparator evidence in its entirety because "he does not provide any comparator foundation consistent with his burden." Reply 3. To clarify, it is true that Plaintiff did not provide comparator foundation; however, Defendants did provide some evidence as a part of the record for their summary judgment motion on this point. The court may consider competent evidence in determining whether a genuine

---

[5] The court did not receive specific information regarding the reason for Williams's termination other than the termination record. Def.'s App. in Resp. to Grant's Mot. to Compel 7.

**Memorandum Opinion and Order - Page 14**

dispute of material fact exists regardless of whom submits it.   Accordingly, the court **overrules** Defendants' objection and **denies** Defendants' motion to strike **as moot** because it has found that Plaintiff has not established a prima facie case.

The court has determined that Plaintiff has not created a genuine dispute of material fact as to whether there were similarly situated employees who were treated more favorably than he was, and he fails to establish a prima facie case.   Defendants' are therefore entitled to judgment as a matter of law.   In any event, assuming that Plaintiff has established a prima facie case, his claims of discrimination based on race and color fail because Defendants have articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and Plaintiff fails to show that the stated reason is a pretext for intentional race or color discrimination.

### C.       Legitimate, Nondiscriminatory Reasons

Defendants have articulated legitimate, nondiscriminatory reasons for terminating Plaintiff's employment.   Defendants also have produced evidence that Plaintiff violated either logbook policies or laws regarding speed limits on multiple occasions.   Lying or falsifying company records is a legitimate, nondiscriminatory reason to terminate or discipline an employee.   *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (stating that falsifying medical records was considered a legitimate, nondiscriminatory reason for discharging an employee); *Pittman v. General Nutrition Corp.*, 515 F. Supp. 2d 721, 738 (S.D. Tex. 2007) (holding that "falsifying Company documents" constitutes a legitimate, nondiscriminatory reason for terminating Plaintiff's employment).   Moreover, failure to obey traffic regulations is a legitimate, nondiscriminatory reason to discharge an employee when his or her work involves driving on public roads.

**Memorandum Opinion and Order - Page 15**

On November 18, 2010, Plaintiff submitted two logs.  Def.'s Mot. at 6.  Plaintiff contends that he did not know he was going to later be dispatched to Longview after he logged out the first time; however, Plaintiff's amended log for that day reflects two time changes earlier in the day before he was dispatched to Longview.  *Id.*  Initially, his log stated that he departed Winston, Missouri, at 7:15am and arrived in Arlington, Texas, at 4:30pm.  *Id.* at 6-7.  Plaintiff later changed his departure time to 7:00am and his arrival time to 4:15pm.  *Id.* at 6-7.  Plaintiff's amended log for November 18th shows that he drove 440 miles (from Winston, Missouri, to McAlester, Oklahoma) in 5 hours.  *Id.* at 7.  Therefore, Plaintiff averaged a speed of 88 miles-per-hour.  *Id.*  Plaintiff's average driving speed for the whole day was 71.9 miles-per-hour.  *Id.*  At no point during Plaintiff's driving did he travel through a section of the highway with a 75 mile-per-hour speed limit. Therefore, Plaintiff either violated the driver's log requirements or violated the law regarding speed limits.

On November 19, 2010, Plaintiff's log showed that he averaged 120 miles-per-hour during a thirty-mile trip between Arlington, Texas, and Venus, Texas.  *Id.*  Additionally, Defendants point out that Plaintiffs logged "on duty / not driving" status during the time that he was having lunch with a coworker on November 19th.  *Id.* at 8.  Fitzgerald warned Plaintiff about his logs.  Def.'s App. 3. Plaintiff again either violated the driver's log requirements or violated the law regarding speed limits.

On February 2, 2011, Plaintiff's log shows that he departed Arlington at 4:00pm even though he was involved in a "mishap" with a forklift at 4:10pm in Arlington and did not leave until after 6:00pm.  *Id.* at 8.  Additionally, Plaintiff's log for February 2, 2011, shows that he drove 174 miles in 2 hours and 15 minutes (Jacksonville, Arkansas, to Hooks, Texas) which means that his average

**Memorandum Opinion and Order - Page 16**

speed was 77.7 miles-per-hour. *Id.* Plaintiff either violated the driver's log requirements or violated the law regarding speed limits for a third time. Fitzgerald issued Plaintiff a Final Written Warning. Def.'s App. 16. Finally, on August 13, 2011, Plaintiff's log shows that he drove 158 miles in two hours at an average speed of 79 miles-per-hour. *Id.* Shortly after this determination, CPC terminated Plaintiff's employment. Def.'s App. 18.

Defendants have articulated a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and produced evidence supporting their reason. The court now continues in its analysis to determine whether the articulated reason was merely a pretext for intentional discrimination based on race or color.

### D.    Pretext

Plaintiff attempts to satisfy his burden by arguing that the Arkansas Highway Patrol did not find any violation in August and therefore he committed no violation. Pl.'s Resp. 10. That the Arkansas Highway Patrol did not find a violation, however, has no bearing on whether officials within CPC and the Crosby Group correctly determined that a violation was committed. As Plaintiff states, the Arkansas Highway Patrol reviewed the logbook on August 20, 2011, which did not contain the entries from November 2010 or February 2011. *See id.* There is no evidence in the record that the Arkansas Highway Patrol did any calculations to determine Plaintiff's average speed. The trooper could have merely been checking to ensure that Plaintiff was logging his entries. This argument is quite beside the point and does nothing to show that Defendants terminated Plaintiff's employment for a discriminatory purpose, namely, on account of his race or color.

Plaintiff also argues that when he wrote down the miles he traveled, he used "air miles" instead of ground miles, and that this detail could have changed the calculation of his speed. Def.'s

App. 89-90.  When Plaintiff was asked during his deposition if he and Fitzgerald discussed the issue of whether air miles or ground miles were used when reviewing the February 2, 2011 driver's log, he responded, "Might have.  I guess[;] I don't remember.  It should have."  *Id*. at 90.  When he was further asked whether he remembered telling Fitzgerald that he was calculating the speed incorrectly by using ground miles instead of air miles, Plaintiff responded, "I think  yeah, on TWC in the hearing I did."  *Id*.  Plaintiff was referring to the Texas Workforce Commission ("TWC"); however, he never mentions the discrepancy between over-the-road miles and air miles in his Amended Complaint or in his response to Defendant's Motion for Summary Judgment.  Moreover, the hearing at TWC occurred after Plaintiff was discharged.  Even if Defendants were under a mistaken impression or were wrong about their employment decision, that decision cannot be deemed discriminatory unless Plaintiff can tie it to some prohibited reason.  This is so because "[t]he question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).  In discrimination cases, the employer needs only to terminate the employee on a good-faith-belief that his conduct was improper or that the employee violated applicable rules of conduct.  *See Waggoner v. City of Garland*, 987 F.2d 1160, 1165 (5th Cir. 1993).

As previously discussed, Plaintiff argues that there were two similarly situated employees who were treated more favorably than he was.  The court has already discussed why these two employees were either not similarly situated or not treated more favorably than Plaintiff.  Even assuming that these employees were similarly situated to Plaintiff and were treated more favorably, Plaintiff has failed to connect this more favorable treatment to a discriminatory, prohibited reason.  Grant, rather than come forth with competent summary judgment evidence, simply has a subjective

**Memorandum Opinion and Order - Page 18**

belief, surmises, or speculates that whites were treated more favorably than was he because of his race. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (citations omitted). "It is more than well-settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." *Id*. at 1430 (citations omitted).

Plaintiff's deposition testimony further shows that Defendants had a good-faith-belief that Plaintiff violated company policies and traffic regulations. When discussing the November 18, 2010 log, he was asked, "But you agree that if your story is 100 percent accurate, then    everything prior to your Longview trip should match up, right, within a    within a degree?" *Id*. at 58. Plaintiff responded, "It    it    it should." *Id*. As noted earlier, Plaintiff's log later that day did not square up with his earlier log. Plaintiff also states that because of the governors that have been placed on the car, it is physically impossible for a driver to go over 75 miles-per-hour. *Id*. at 62. Since his truck is generally prevented from going over 75 miles-per-hour and his average speed was calculated to be over 75 miles-per-hour on a couple of occasions, Defendants had substantial evidence to believe that Plaintiff falsified his logbook or violated traffic regulations, both of which provide ample grounds to terminate his employment. Plaintiff also stated that maybe he should have rounded his time up at times and maybe he should have rounded down at times. *Id*. at 63. He admitted to using poor judgment in his rounding of time when he inserted his logbook entries. *Id*. at 64. In Plaintiff's Amended Complaint and in his response to Defendants' Motion for Summary Judgment, he "disputed that the logbook demonstrated speeding or a log violation because the time record on the

**Memorandum Opinion and Order - Page 19**

logbook is a rounding system, rounded to fifteen-minute intervals, and Plaintiff *erroneously rounded his time down*." Pl.'s Amended Compl. ¶ 11 (emphasis added); Pl.'s Resp. 10 (emphasis added). Additionally, during his deposition, he explained that "it might have looked like I was speeding, but I wasn't speeding. I just rounded off. I should have rounded off   instead of rounding off forward, I should have rounded off backward." *Id*. at 65-66. When asked if he gave the impression that he was speeding, Plaintiff responded, "Well, they might have took it that way, but I wasn't technically, I wasn't speeding." *Id*. 66. Based on this admission alone, Defendants had a good-faith-belief for concluding that Plaintiff either falsified his logbook or violated traffic regulations, even if Plaintiff did not violate these policies or regulations.

For the above stated reasons, the court concludes that no genuine dispute of material fact exists regarding Plaintiff's claims of race and color discrimination. Accordingly, Defendants are entitled to judgment as a matter of law, and the court will grant summary judgment in favor of Defendants on these claims.

### E.    Retaliation

The first matter to be determined in a Title VII or TCHRA retaliation claim is whether Grant engaged in a protected activity. There is no evidence that Plaintiff opposed any unlawful employment practice or that, prior to his discharge, he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Plaintiff states that he complained about a fellow employee visiting a "sex club"; however, the court knows of no authority that holds that the reporting of a fellow employee visiting a "sex club" during work hours is protected activity. Nothing in the record shows or even intimates that Plaintiff engaged in protected activity. Thus, he fails to establish the first element of a prima facie claim of retaliation.

Although Plaintiff establishes that he suffered an adverse employment action, and even assuming that he engaged in protected activity, nothing in the record establishes a causal link between the protected activity and the subsequent discharge.  The court cannot reasonably infer such a causal link when the record is totally devoid of the date that Plaintiff reported the incident to his supervisor.  The court does not know at what point during Grant's employment that this occurred, and it is impossible to infer reasonably a causal connection between the allegedly protected activity and Grant's termination.  Even if Grant could establish a prima facie claim of retaliation, the claim fails because no evidence raises a genuine dispute of material fact that Grant's participation in protected activity was the "but for" cause of his termination, namely, that his termination would not have occurred except for him engaging in protected activity.  Accordingly, Grant fails to raise a genuine dispute of material fact regarding his claim of retaliation, and Defendants are entitled to judgment as a matter of law on this claim.

## VII.    Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists as to Plaintiff's claims for race and color discrimination, or retaliation, under Title VII, 42 U.S. § 1981, or TCHRA.  Defendants are therefore entitled to judgment as a matter of law on these claims.  Accordingly, the court **grants** Defendants' Motion for Summary Judgment and **dismisses with prejudice** this action.  Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 20th day of November, 2013.

Sam A. Lindsay
United States District Judge